# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RICHARD J. REILLY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 11-cv-0544 (KBJ) |
| | ) |
| SECRETARY OF THE NAVY, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

Plaintiff Richard J. Reilly ("Reilly"), a former Captain in the Marine Corps Reserves ("MCR"), filed the Amended Complaint (ECF No. 6) ("Am. Compl.") in the instant case on January 30, 2012, naming as defendants the Secretary of the Navy, the Board for Correction of Naval Records ("BCNR"), and the United States (collectively, "Defendants"). Reilly's claims stem from his twice being denied promotions to the rank of Major within the MCR. Reilly alleges that he was denied promotion and subsequently discharged from the MCR because of a clerical error in the approval process for his first application for promotion—an error that, according to Reilly, the BCNR wrongly declined to correct. The Amended Complaint contains two counts: "improper discharge" (Count I), and violation of the Administrative Procedures Act ("APA"), 5 U.S.C. § 702 (2012) (Count II). The Prayer for Relief in the Amended Complaint requests "constructive service from the time [Reilly] was improperly removed from the promotions list[,]" along with "back pay, allowances, restoration of date of rank and lineal precedence, and any other emoluments" that Reilly would have been entitled to had he not been denied promotion. (Am. Compl. at 7.)

1

Before the Court now is Defendants' motion to dismiss Reilly's claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or in the alternative, to grant summary judgment in favor of Defendants pursuant to Rule 56. For the reasons set forth below, the Court will **GRANT** Defendants' motion, dismissing Count I of Reilly's Amended Complaint, and entering summary judgment in Defendants' favor with respect to Count II. A separate order consistent with this opinion will follow.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. Legal Framework For Military Promotions

Reserve military officers are selected for, and receive, promotions in rank pursuant to parameters that are set forth in a federal statute. *See* 10 U.S.C. §§ 14101-317 (2012). As with active duty officers, the law dictates that "selection boards" constituted pursuant to 10 U.S.C. § 14101 determine the promotion-eligibility of reserve officers.[1] After reviewing all eligible candidates for promotion, the selection board returns to the Secretary of the relevant military department a report listing the names of the officers the selection board recommends for promotion. *See* 10 U.S.C. §§ 14108, 14109. The Secretary then reviews this report to ensure that it complies with applicable laws and regulations, and subsequently submits the report, along with any additional recommendations, to the Secretary of Defense, for further transmittal to the President for his approval. 10 U.S.C. § 14111. During this process, the Deputy Secretary of Defense, the Secretary of Defense, or the President may remove from the promotion list the names of officers the selection board recommended for promotion.

---

[1] The Secretary of the relevant military department appoints the members of the selection board according to certain criteria that are laid out in the statute and are not relevant here, as Reilly does not challenge the constitution of the selection board. *See* 10 U.S.C. § 14102.

10 U.S.C. § 14111(b).  The names of officers who are ultimately selected for promotion are disseminated to the relevant military department at any time after the President approves them.  10 U.S.C. § 14112.  However, the President retains the authority to remove the name of any officer from a promotion list at any time before that officer is actually promoted.  10 U.S.C. § 14310(a).

## B.  The 2003 Promotion Board's Selection Of Reilly And Reilly's Subsequent Removal From The 2003 Major Promotion List

Reilly was commissioned as an officer in the Marine Corps in April of 1993, and remained on active duty until February of 2001, when he resigned his commission and accepted a new commission as a Captain in the MCR.  (Am. Compl. ¶ 6.)  Subsequently, the Fiscal Year 2003 Reserve Major Promotion Board (the "2003 Promotion Board"), a board that the Secretary of the Navy duly constituted pursuant to 10 U.S.C. § 14101, selected Reilly for promotion to Major.  (*Id.*)[2]  As a result of this selection, Reilly's name was placed on the 2003 Major Promotion List, and his promotion was scheduled to go into effect on October 1, 2002, once the list received approval from the President.  (Administrative Record ("AR") (ECF No. 9) at 11 (Memorandum from Commandant of the Marine Corps to Acting Secretary of the Navy Regarding Captain Richard J. Reilly ("CMC Memo")).)  However, on September 26, 2002, Reilly was informed that his promotion had been delayed and that the removal of his name from the 2003 Major Promotion List was under consideration.  (*Id.* at 10.)

The delay was due to a Non-Judicial Punishment ("NJP") present in Reilly's military record.  Reilly had received the NJP as a result of an incident that had occurred

---

[2] Although the record does not reflect the exact date of Reilly's selection, based on record evidence concerning the Major selection process for subsequent years, it is likely that Reilly's selection occurred in approximately April of 2002.  (*See* AR at 220 (Memorandum from CMC to Reilly Regarding Mandatory Separation) (indicating that 2006 Major Promotions List was determined in April of 2005).)

in March of 1998, while Reilly, then on active duty, was stationed in Norway. Reilly

went to a bar during a period of "liberty," and became intoxicated. (AR at 10 (CMC

Memo).)[3] Then, while riding a Marine transport bus back to his base, Reilly grabbed

the buttocks and crotch area of a female Marine. (*Id.*; Am. Compl. ¶ 7.) Reilly was

subsequently charged with one count of "behavior unbecoming an officer and a

gentleman" pursuant to 10 U.S.C. § 933, and he voluntarily accepted NJP in April of

1998. (AR at 49 (Punitive Letter of Reprimand to Captain Richard J. Reilly).) As a

result, Reilly received a letter of reprimand and was required to forfeit $500 in pay for

two months, and $250 in pay for two additional months. (*Id.* at 43 (Report of

Nonjudicial Punishment in the Case of Captain Richard J. Reilly).)

On June 9, 2003, while the removal of Reilly's name from the 2003 Major

Promotion List was still under consideration, the Acting Commandant of the Marine

Corps ("CMC"), Gen. Michael W. Hagee, sent a three-page memorandum to the

Secretary of the Navy with the subject line "POSSIBLE REMOVAL FROM THE FY03

MAJOR (USMCR) PROMOTION LIST IN THE CASE OF CAPTAIN RICHARD J.

REILLY." (AR at 10-12 (CMC Memo).)[4] In the Memorandum, the CMC

acknowledged and explained the circumstances of Reilly's NJP. (*Id.* at 10.) The CMC

also noted that Reilly's then-current commanding officers uniformly praised him and

that these officers opined that the 1998 NJP incident "is considered an anomaly from an

---

[3] Liberty is "the authorized absence of an individual from a place of duty not chargeable as leave."
Marine Corps Manual W/CH 1-3 at A-2 (March 21, 1980).

[4] The Commandant of the Marine Corps is the highest-ranking officer in the Marine Corps. He is
appointed by the President and reports directly to the Secretary of the Navy. *See* 10 U.S.C. § 5043.
The record in this case does not reflect the specific circumstances under which the CMC drafted the
memo—that is, whether it was pursuant to standard internal procedures, whether Reilly or the Secretary
of the Navy requested that the CMC draft the memo, or whether the CMC drafted the memo of his own
volition.

otherwise sustained record of excellence and high standard of conduct." (*Id.* at 11-12.) Finally, the CMC himself noted his belief that "this single incident was out of character for Captain Reilly and I believe it to be a one-time lapse in judgment. . . . Therefore, I do not believe this incident merits Captain Reilly's removal from the promotion list." (*Id.* at 12.) This memorandum of endorsement concluded with the CMC's signature, and underneath the CMC's signature on the last page of this memorandum was the phrase "SECNAV DECISION," followed by three additional lines stating "APPROVE," "DISAPPROVE," and "OTHER." Next to each of these words was a blank space for the Secretary of the Navy's signature. (*Id.*)

On February 17, 2004, the Secretary of the Navy disapproved the CMC's promotion recommendation by initialing and dating the "DISAPPROVE" line at the end of the CMC's memorandum. (AR at 12 (CMC Memo).) The Deputy Secretary of Defense, Paul Wolfowitz, then wrote a separate memorandum to President George W. Bush on behalf of the Secretary of Defense on May 31, 2004, requesting that Reilly's name be removed from the 2003 Major Promotion List. (AR at 13 (Memorandum from Deputy Secretary of Defense to President ("Wolfowitz Memo")).) In the memorandum, the Deputy Secretary of Defense specifically noted that he was recommending Reilly's removal from the 2003 Major Promotion List because "[a]fter reviewing Captain Reilly's response and the evidence contained in the investigative report, the Commandant of the Marine Corps states that he has lost trust and confidence in this

officer's ability to assume positions of greater responsibility." (*Id.*)[5] The President

removed Reilly's name from the 2003 Major Promotion List on June 21, 2004. (*Id.*)

### C. The 2006 Promotion Board's Denial Of Reilly's Promotion Application

Reilly was once again eligible for promotion to Major via the Fiscal Year 2006

Major Promotion Board (the "2006 Promotion Board"). (Am. Compl. ¶ 10.)[6] The 2006

Promotion Board denied Reilly's application on April 29, 2005. (AR at 220

(Memorandum from CMC to Reilly Regarding Mandatory Separation), ¶ 3.) Reilly's

second failure to be selected for promotion required his mandatory separation from the

MCR pursuant to 10 U.S.C. § 14505.[7] Accordingly, Reilly's separation from the MCR

was set for November 1, 2005. (*Id.*)

### D. Reilly's Petition To The BCNR

On June 8, 2005, while his mandatory separation was pending, Reilly filed a

petition with the BCNR seeking to have the records in his personnel file regarding his

two failures to achieve promotion to Major "corrected." (AR at 6-9 (BCNR Petition).)

The BCNR operates pursuant to 10 U.S.C. § 1552, which grants the Secretary of the

Navy the authority to establish procedures for the correction of military records upon

request of a claimant. The regulations governing the BCNR provide that

---

[5] The Deputy Secretary's letter to the President did not specifically reference the CMC's June 9, 2013, memorandum to the Acting Secretary of the Navy, nor did it specifically state what documents it was referencing when it referred to "Captain Reilly's response" and the "investigative report."

[6] Because his 2003 promotion application took nearly two and a half years to process, Reilly had to wait until 2005 to re-apply for promotion.

[7] 10 U.S.C. § 14505 provides that: "a captain on the reserve active-status list of the . . . Marine Corps . . . who has failed of selection for promotion to the next higher grade for the second time . . . shall be separated in accordance with section 14513 of this title not later than the first day of the seventh month after the month in which the President approves the report of the board which considered the officer for the second time."

> [t]he Board is not an investigative body. Its function is to consider
> applications properly before it for the purpose of determining the
> existence of error or injustice in the naval records of current and former
> members of the Navy and Marine Corps, to make recommendations to the
> Secretary or to take corrective action on the Secretary's behalf when
> authorized.

32 C.F.R. § 723.2(b) (2013). The regulations further provide that an application for

correction may be denied if the Board "determines that the evidence of record fails to

demonstrate the existence of probable material error" and that, in making this

determination, "the Board relies on a presumption of regularity to support the official

actions of public officers and, in the absence of substantial evidence to the contrary,

will presume that they have properly discharged their official duties." *Id.* § 723.3(e)(2).

When the BCNR denies an application, it must "be made in writing and include a brief

statement of the grounds for denial." *Id.* § 723.3(e)(3). The BCNR's written opinion

must also attach "any advisory opinion considered by the Board which is not fully set

out in the statement." *Id.* § 723.3(e)(4).

   Reilly's petition to the BCNR specifically requested that all documents

associated with his removal from the 2003 Major Promotion List be removed from his

official record, and that his failure to be selected to the 2006 Major Promotion List be

removed from his record as well. (AR at 9 (BCNR Petition).) The stated basis for

Reilly's petition was his belief that the Deputy Secretary of Defense (and consequently

the President) had received erroneous information regarding the CMC's opinion of

whether Reilly should be retained on the 2003 Major Promotion List. (*Id.* at 6-7;

Plaintiff's Response to Motion to Dismiss (ECF No. 11) ("Pl. Br.") at 4.) According to

Reilly, the Deputy Secretary of Defense had mischaracterized the CMC as having "lost

trust and confidence in this officer's ability to assume positions of greater

responsibility" (AR at 13 (Wolfowitz Memo)), when in fact, quite to the contrary, the CMC's prior memorandum to the Secretary of the Navy had specifically stated that "I recommend that Captain Reilly's name remain on the Fiscal year 2003 Reserve Major Promotion List" (AR at 11 (CMC Memo)). Given this alleged mistake, Reilly reasoned that, if the BCNR removed all of the documents that had been added to his file related to promotion after his name was placed on the 2003 Major Promotion List, then his place on the 2003 Major Promotion List would be restored and could then be resubmitted to the Secretary of the Navy and the President for approval. (AR at 6-7 (BCNR Petition).)

After receiving Reilly's petition, the BCNR sought an advisory opinion on Reilly's case from the Judge Advocate Division of the Military Justice Branch ("JAM") at Headquarters Marine Corps. (Defendants' Brief in Support of Motion to Dismiss (ECF No. 10-1) ("Def. Br.") at 5; Pl. Br. at 4-5.) On August 26, 2005, JAM provided an opinion recommending that Reilly's petition be denied. (AR at 15 (JAM Advisory Opinion).) JAM's opinion was based largely on the affidavit of Matthew Spurlock, a JAM lawyer. (*Id.*) Spurlock's affidavit stated that he had interviewed Major Peter Gillis, who had been the Head of Officer Promotions for MCR during the time when the removal of Reilly's name from the 2003 Major Promotion List was under consideration. (AR at 17 (Spurlock Affidavit).) Spurlock averred that Major Gillis told him that Gillis had personal knowledge that the CMC had changed his recommendation regarding Reilly, and that the Deputy Secretary of Defense's May 31, 2004, memorandum to the President accurately reflected the CMC's final recommendation. (*Id.*) The BCNR obtained an affidavit from Major Gillis himself in August of 2005, which was identical

in substance to the affidavit that Spurlock provided. (AR at 19 (Gillis Affidavit).)

BCNR procedures provided Reilly a chance to respond to both affidavits, which he did.

Reilly criticized the affidavits as hearsay, and also questioned both how Major Gillis

could have been privy to conversations between much higher-ranking officers and why

there was no written document memorializing the CMC's supposed change of opinion

regarding Reilly's promotion. (AR at 20-24 (Letters from Reilly's Counsel to BCNR

Responding to JAM Advisory Opinion).)

On October 17, 2005, the BCNR issued a two-page decision denying Reilly's

petition to "correct" his personnel file by removing promotion-related records. (AR at

1-2 (BCNR Decision Letter).) The BCNR decision found that "the evidence submitted

was insufficient to establish the existence of probable material error or injustice." (*Id.*)

In so finding, the BCNR relied primarily upon the affidavit of Major Gillis, as well as

the "presumption of regularity" that "attaches to all official records." (*Id*. at 2.)

### E. Reilly Files A Lawsuit

On August 3, 2009, Reilly filed a complaint in the United States Court of Federal

Claims, alleging claims under the Tucker Act, 28 U.S.C. § 1491, and the APA, and

seeking restoration of rank as well as all emoluments and back pay. *See Reilly v.

United States*, 93 Fed. Cl. 643, 645 (Fed. Cl. 2010).[8] On July 9, 2010, the Court of

Federal Claims dismissed Reilly's monetary claims pursuant to Fed. R. Civ. P. 12(b)(6).

*Id.* at 650. The court held that the Tucker Act did not apply because Reilly had failed

to identify any constitutional, statutory, or regulatory basis supporting the argument

---

[8] The Tucker Act, which Reilly invoked as the basis of his monetary claims, affords the Court of Federal Claims jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491 (2012).

that he was entitled to monetary relief. *Id.* at 648-649. The Court of Federal Claims also concluded that it had no jurisdiction over Reilly's request for non-monetary relief and, accordingly, transferred Reilly's remaining claims to this Court pursuant to 28 U.S.C. § 1631. *Id.* at 653.

The instant case was docketed in the United States District Court for the District of Columbia on March 15, 2011 (ECF No. 1), and Reilly filed his Amended Complaint on January 30, 2012. (ECF No. 6.) As noted above, the Amended Complaint contains two counts: improper discharge (Am. Compl. ¶¶ 12–15), and violation of the APA based on the BCNR's allegedly erroneous denial of Reilly's petition (*id.* ¶¶ 16–19). On March 30, 2012, Defendants filed the instant motion, arguing that Reilly's claims should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and/or failure to state a claim upon which relief can be granted, or in the alternative that the Court should grant summary judgment in Defendants' favor. (*See generally* Def. Br.) The motion was fully briefed on May 30, 2012, and after transfer of this case to the undersigned on April 5, 2013, this Court held a motions hearing on June 12, 2013.

## II.  STANDARD OF REVIEW

### A.  Motion To Dismiss

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must treat a complaint's factual allegations as true, and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). Nevertheless, the Court need not accept inferences that favor

the plaintiff if the facts alleged in the complaint do not support them, nor must the Court accept a plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

With respect to motions to dismiss under Rule 12(b)(6), a plaintiff need not plead "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); however, a plaintiff must plead enough facts to make the claim seem plausible on its face. *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Although a plaintiff may still survive a Rule 12(b)(6) motion even where "recovery is very remote and unlikely[,]" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Twombly,* 550 U.S. at 555–56 (internal quotation marks and citation omitted). Moreover, a pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

## B. Summary Judgment In Administrative Review Cases

As a general matter, summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"Summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with

the APA standard of review." *Loma Linda Univ. Med. Ctr. v. Sebelius*, 684 F. Supp. 2d 42, 52 (D.D.C. 2010) (citing *Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207 (D.D.C. 2007)); *see also Richards v. INS*, 554 F.2d 1173, 1177 n. 28 (D.C. Cir. 1977). However, due to the limited role a court plays in reviewing the administrative record to evaluate whether an agency has complied with the APA, the typical summary judgment standards are not applicable. *Stuttering*, 498 F. Supp. 2d at 207. Rather, "[u]nder the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Id.* (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985)). In other words, "when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal," and "[t]he 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (footnote and citations omitted).

Significantly, the APA provides a "default standard" of judicial review of agency actions on summary judgment when the governing statute does not otherwise provide one: "[a] court must set aside agency action it finds to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 736 n. 10 (D.C. Cir. 2001) (quoting 5 U.S.C. § 706(2)(A)). "The 'arbitrary and capricious' standard of review as set forth in the APA is highly deferential," and the Court must therefore "presume the validity of agency action." *Am. Horse Prot. Ass'n v. Yeutter*, 917 F.2d 594, 596 (D.C. Cir. 1990). Although the "court

is not to substitute its judgment for that of the agency[,] . . . the agency must examine the relevant data and articulate a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citations and quotation marks omitted).

Finally, a court must apply an "unusually deferential" standard when reviewing an action of a military record corrections board in particular. *Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006). This is because military boards are entitled to even greater deference than civilian administrative agencies. *See Labin v. Harvey*, Civ. No. 05-315, 2006 WL 949884, at *5 (D.D.C. Apr. 10, 2006). Such substantial deference "ensure[s] that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its areas of competence." *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000). Accordingly, in contrast to civilian agencies undergoing APA review, a military agency is merely required to show a "rational connection between the facts found and the choice made." *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997).

## III. ANALYSIS

Defendants argue that Reilly's Amended Complaint must be dismissed in its entirety both on jurisdictional grounds and because Reilly's complaint fails to state a claim upon which relief can be granted. (*See* Def. Br. at 15-26.) For the reasons that follow, the Court concludes that (1) Reilly's claim for monetary relief as a result of his alleged improper discharge must be dismissed; (2) there is no *jurisdictional* bar to the

Court's consideration of Reilly's improper discharge claim, but Reilly's claim in this regard (which is, at bottom, a request for an order requiring that the military reinstate Reilly and promote him retroactively as a result of his alleged improper discharge) is nonjusticiable and unreviewable; and (3) the BCNR did not act arbitrarily, capriciously, or contrary to the evidence in violation of the APA when it denied Reilly's petition to correct his military personnel records.

## A. Defendants' Jurisdictional Challenges To Reilly's Improper Discharge Claim

### 1. Reilly's Claim For Monetary Damages

Defendants first maintain that this Court lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) to consider Reilly's improper discharge claim to the extent that Reilly seeks monetary damages, and they invoke sovereign immunity as the basis for this argument. (*See* Def. Br. at 15-16.) But Reilly's stated prayer for "back pay," "allowances," and "interest" accrued "from the date he should have been originally promoted in calendar year 2003" (Am. Compl. at 7)—which he asserts in Count I as part of the improper discharge claim—is far more easily dispensed with, primarily because Reilly has *conceded* Defendants' dismissal arguments in regard to this damages request and has expressly withdrawn this contention from his complaint. Specifically, in response to Defendants' argument that there has been no waiver of sovereign immunity that would entitle Reilly to monetary relief under any of the applicable statutes, Reilly has made clear that his request for monetary damages should be taken off the table. (*See* Pl. Br. at 8-9 ("[I]f the Court believes that the complaint is asking for monetary damages, then the plaintiff asks for leave to amend to make clear what the plaintiff believes is the gravamen of this case—equitable relief as only this

Court can grant.").) What is more, during the motion hearing, Reilly's counsel reiterated that Reilly does not seek monetary relief in the present action.[9]

This Court sees no reason to rule on the appropriateness of a claim that Plaintiff apparently no longer wishes to make. Consequently, insofar as Count I of Reilly's Amended Complaint requests monetary relief, Defendants' motion to dismiss that claim is deemed conceded and is therefore granted. *See, e.g.*, *Ali v. D.C. Court Servs.*, 538 F. Supp. 2d 157, 161 (D.D.C. 2008) (court will dismiss claims that the plaintiff concedes).

### 2. Exhaustion Of Administrative Remedies

Defendants further maintain that, insofar as Reilly's improper discharge claim encompasses a request for equitable relief in the form of an "award" of "constructive service from the time [Reilly] was improperly removed from the promotion list" and "restoration of date of rank and lineal precedence," as well as "any other emoluments to which [Reilly] was entitled as a result of [his] improper removal from the promotion list" (Am. Compl. at 7), Reilly has failed to comply with the applicable statutory exhaustion requirement, and therefore the Court lacks jurisdiction to consider Reilly's claim. (Def. Br. at 16-18.)

To be sure, it is a basic tenet of administrative law that parties are required to exhaust any available administrative remedies before seeking relief in the federal courts. *Hettinga v. U.S.*, 560 F.3d 498, 502-3 (D.C. Cir. 2009) (citing *McCarthy v. Madigan*, 503 U.S. 140, 144-45 (1992)). The law in this Circuit, however, recognizes that the term "exhaustion" as used in the administrative law context may refer to either

---

[9] *See* 6/12/2013 Motion Hearing Transcript at 9:13-16:
        THE COURT: So can you tell me what relief is being sought here?
        MR. SARAN: Well, it is obviously not monetarily [sic].

one of two distinct legal concepts. First, it may refer to "jurisdictional exhaustion," which arises when a statute requires a specific type of exhaustion before the federal courts may exercise jurisdiction over a claim implicating that statute. *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004). For a reviewing court to find a jurisdictional exhaustion requirement, the statute must contain "sweeping and direct statutory language indicating there is no federal jurisdiction prior to exhaustion." *Id.* at 1248 (internal quotation marks and citations omitted). Because jurisdictional exhaustion requirements are an exercise of Congress's power to limit the jurisdiction of the federal courts, they are mandatory and courts may not waive them. *Id.* at 1247. Second, the term "exhaustion" may also refer to "non-jurisdictional" or "prudential" exhaustion, which is a "judicially created doctrine requiring parties who seek to challenge agency action to exhaust available administrative remedies before bringing their case to court." *Id.* This doctrine "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency," *McCarthy*, 503 U.S. at 145, and is governed by "sound judicial discretion," *id.* at 144.

Defendants in the instant case invoke only the "jurisdictional" form of exhaustion in their motion to dismiss. Specifically, Defendants point to 10 U.S.C. § 14502(g), a statutory provision that concerns a "special" selection board ("SSB") that the Secretary may opt to convene when, as a result of administrative error or otherwise, a promotion board does not select an eligible officer for promotion. (Def. Br. at 16.)[10]

---

[10] Section 14502(a)(1) of Title 10 provides that "[i]n the case of an officer . . . who the Secretary . . . determines was not considered for selection for promotion . . . because of administrative error . . . the Secretary concerned shall convene a special selection board under this subsection to determine whether such officer or former officer should be recommended for promotion." *See also* 10 U.S.C. § 14502(b)(1) (giving the Secretary authority to convene a special selection board for officers considered for promotion but not selected if "the action of the selection board that considered the

As concerns such special selection boards, section 14502(g) provides:

No official or court of the United States shall have power or jurisdiction—

(1) over any claim based in any way on the failure of an officer or former officer of the armed forces to be selected for promotion by a selection board convened under chapter 1403 of this title until—

(A) the claim has been referred to a special selection board by the Secretary concerned and acted upon by that board; or

(B) the claim has been rejected by the Secretary without consideration by a special selection board; or

(2) to grant any relief on such a claim unless the officer or former officer has been selected for promotion by a special selection board convened under this section to consider the officer's claim.

10 U.S.C. § 14502(g). The statute goes on, at 10 U.S.C. § 14502(h), to address the scope of the authorized judicial review:

(1) A court of the United States may review a determination by the Secretary concerned . . . not to convene a special selection board. If a court finds the determination to be arbitrary or capricious, not based on substantial evidence, or otherwise contrary to law, it shall remand the case to the Secretary concerned, who shall provide for consideration of the officer or former officer by a special selection board under this section.

(2) If a court finds that the action of a special selection board which considers an officer or former officer was contrary to law or involved material error of fact or material administrative error, it shall remand the case to the Secretary concerned, who shall provide the officer or former officer reconsideration by a new special selection board.

10 U.S.C. § 14502(h).

By their plain terms, the provisions of §§ 14502(g) and (h) together establish a jurisdictional exhaustion requirement that must be met before a military officer can bring a claim in federal court that relates to a selection board's decision not to select

officer or former officer was contrary to law" or "the selection board did not have before it for its consideration material information").

him or her for promotion.  That is, before a claim that is "based in any way on the failure of an officer or former officer of the armed forces to be selected for promotion by a selection board" can make its way into federal court, the relevant Secretary must either refer it to an SSB, or the relevant Secretary must reject it without referral to an SSB.  10 U.S.C. § 14502(g)(1)(A), (B).  In either case, if the officer does not receive the relief he seeks, he may bring to federal court either a challenge to the Secretary's decision not to convene an SSB, or a challenge to the decision of the SSB itself.  Thereafter, if the court finds that the Secretary's decision not to convene an SSB, or the action of an SSB, "was contrary to law or involved material error of fact or material administrative error, it shall remand the case to the Secretary concerned, who shall provide the officer or former officer" with consideration by an SSB (if no such board originally considered the claim) or reconsideration by a new SSB (if the challenge is to the SSB's determination).  10 U.S.C. § 14502(h)(1), (2).  Thus, it is clear beyond cavil that a plaintiff *must* seek the decision of an SSB before bringing a non-selection claim to federal court.  *See, e.g.*, *Millican v. U.S.*, No. 05-1330C, 2006 WL 5640829, at *15 n. 13 (Fed. Cl. August 24, 2006); *see also Scott v. England*, 264 F. Supp. 2d 5, 8 (D.D.C. 2002) (noting that the purpose of a statutory exhaustion requirement is "to provide the agency with notice and an opportunity to rectify any wrong through the conciliation process or through administrative relief").

Significantly, when evaluating the exhaustion requirements of § 14502, courts have consistently drawn a distinction between an officer's claim *based on a failure to be selected* for promotion, and situations where an officer's name was *removed* from a promotion list after the officer had already been selected.  In the *Millican* case, for

example, the Court of Federal Claims considered the claim of a plaintiff (Major Millican), an Air Force officer, who—like Reilly—had been selected for promotion and subsequently had his name removed from the relevant promotion list. Major Millican had also been denied selection for promotion a second time, and subsequently forced to retire pursuant to 10 U.S.C. § 14505. *Millican*, 2006 WL 5640829 at *2. After unsuccessfully petitioning the Air Force Board of Corrections for Military Records to set aside both his removal from the selection list and his subsequent denial of selection, Major Millican appealed to the Court of Federal Claims. *Id.* He then brought a motion seeking to remove his case to the U.S. District Court for the District of Columbia. *Id.* at *5. In opposing the motion, Defendants argued in part that the district court lacked jurisdiction over Major Millican's claims based on § 14502.

The court disagreed, noting that "[t]he record here is clear that in June 1999, Major Millican was, in fact, *selected* for promotion by the Air Force reserve's selection board." *Id.* at *15 (emphasis added). And "because plaintiff *was* chosen for promotion," *id.* (emphasis in original), the court reasoned that "it would defy common sense to penalize him for a lack of review by an SSB[,]" *id.* (citing *Barnes v. U.S.*, 66 Fed. Cl. 497, 507 (Fed. Cl. 2005)).[11] The court therefore concluded that the district court could properly exercise jurisdiction over a claim based on Major Millican's removal from the promotion list. *Id.* at *16.

In the instant case, Defendants do not address the question of whether § 14502 would bar a claim predicated on Reilly's removal from the 2003 Major Promotion List.

---

[11] The court in *Millican* did note that "a challenge to the Air Force's October 2002 decision not to select plaintiff for promotion does appear to be barred from judicial review, except to the extent that a court may review the selection board's decision not to convene an SSB to review that matter." 2006 WL 5640829 at *15 n.13.

Instead, Defendants argue that, because Reilly's claim is styled as one for "improper discharge," the only relevant action is the 2006 Promotion Board's denial of selection for promotion (Reilly's second promotion review), which was the proximate cause of Reilly's mandatory separation pursuant to 10 U.S.C. § 14505. (Def. Br. at 16-18.) Defendants point to the language of the exhaustion statute, which applies to "any claim based in any way on the failure of an officer or former officer of the armed forces to be selected for promotion," and maintains that this statutory provision should be construed broadly to apply to Reilly's improper discharge claim here. (Defendant's Reply Brief (ECF No. 12) at 4.)

In response, Reilly argues that § 14502 does not apply to his case because it applies only to an officer's failure to be selected. (Pl. Br. at 11-12.) Reilly contends that his case does not fall within the ambit of the statute because he *was* in fact selected for promotion in 2003—only to have his name removed from the selection list at the eleventh hour. (*Id.*) Reilly further maintains that the outcome of the second promotion consideration was a foregone conclusion in light of the initial removal (Pl. Br. at 12-13), and that the separation was a mandatory follow-on from his second failure of promotion, therefore the operative action for the purpose of his alleged improper discharge was the initial selection and removal in 2003. (*Id.*)

The crux of the question before the Court with respect to jurisdictional exhaustion is whether Reilly's improper discharge claim is, in fact, "based" upon the fact that he was not selected for promotion in 2006. The Court approaches this issue mindful of the fact that "jurisdiction over a claim is controlled by the claim's substance, not the plaintiff's characterization of the claim." *Williams v. U.S.*, 932 F. Supp. 357,

362 (D.D.C. 1996).  Here, although Reilly has characterized his claim as one for "improper discharge," which would at first glance appear to implicate his 2006 denial of selection, the complaint's allegations are not at all focused on the 2006 denial of selection; rather, Reilly trains his aim at the chain of events that led to his removal from the 2003 Major Promotion List.  Indeed, the indisputable gravamen of Reilly's complaint is the allegation that, in 2004, "the Secretary of the Navy erroneously reported to the [Secretary of Defense] that Plaintiff had *not been recommended* for promotion by the [CMC]."  (Am. Compl. ¶ 13 (emphasis in original).)  This mistake, according to the Complaint, "directly caused" Reilly's eventual mandatory separation (*id.* ¶ 15), and it is this mistake—and only this mistake—that Reilly seeks to correct through this action.

In the Court's view, then, the Amended Complaint is not "based" on the fact that Reilly was not selected for promotion in 2006, and consequently, Reilly's complaint does not implicate the exhaustion provisions of § 14502.  Put differently, for the purpose of § 14502, Reilly is not challenging his "failure to be selected" in 2006, but rather the circumstances surrounding the removal of his name from the 2003 Major Promotion List in June of 2004.  Consequently, the Court finds that Reilly was not required to request that an SSB consider his improper discharge claim—which, in substance, is really an improper *removal* claim—before bringing that claim to federal court.[12]

---

[12] The fact that Reilly's improper discharge claim is not subject to the jurisdictional exhaustion requirement of § 14502 does not resolve the issue of whether Reilly has adequately complied with any non-jurisdictional exhaustion requirements.  *See Avocados Plus*, 370 F.3d at 1248  ("[T]he existence of an administrative remedy automatically triggers a non-jurisdictional exhaustion inquiry.").  The prudential form of exhaustion, which is governed by "sound judicial discretion," *Hettinga*, 560 F.3d at 503, generally serves three functions: "giving agencies the opportunity to correct their own errors, affording parties and courts the benefits of agencies' expertise, [and] compiling a record adequate for

### B. Defendants' Argument That Reilly's Improper Discharge Claim Is Nonjusticiable and Unreviewable

Defendants also assert that, apart from the issue of exhaustion, the Court may not adjudicate Reilly's improper discharge claim because Reilly's claim implicates a "quintessentially nonjusticiable military personnel decision." (Def. Br. at 19.) Defendants press two arguments in support of this position: first, that Reilly's claim essentially seeks his "retroactive promotion," which is beyond the power of the Court to grant and therefore nonjusticiable, *id*.; and second, that Reilly's claim implicates the discretionary decision-making of the President and other executive branch officers, and therefore even if it is theoretically jusiticable, it is not reviewable under the APA or any other statute, *id*. at 20-21.

The justiciability of a claim is not a question of subject matter jurisdiction, but rather of the court's competence to address a particular claim. *See Oryszak v. Sullivan*, 576 F.3d 522, 526 (D.C. Cir. 2009) ("That a plaintiff makes a claim that is not justiciable because committed to executive discretion does not mean the court lacks subject matter jurisdiction over his case[.]"). A court's inquiry into the justiciability of a particular claim turns "upon the inappropriateness of the subject matter for judicial consideration," which, in turn, requires a determination of "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." *Baker v. Carr*, 369 U.S. 186, 198

---

judicial review[.]" *Marine Mammal Conservancy, Inc. v. Dep't of Agric.*, 134 F.3d 409, 412 (D.C. Cir. 1998). Here, Reilly petitioned the BCNR, which considered the claim at issue and generated a reviewable administrative record, and this has been the held to be the proper course of administrative action for "a plaintiff who seeks relief from the military's failure to promote her" in other cases. *See, e.g.*, *Lewis v. Rumsfeld*, 154 F. Supp. 2d. 56, 60-61 (D.D.C. 2001). Furthermore, Defendants do not identify any additional administrative remedies available to Reilly that might raise concerns about whether the agency had a sufficient opportunity to address Reilly's claim of error. Thus, the Court has no reason to conclude that Reilly's claim should trigger an inquiry into non-jurisdictional exhaustion.

(1962).  Thus, "[e]ven where a court possesses jurisdiction to hear a claim, it may not do so in cases where the claim presents a nonjusticiable controversy—*i.e.*, the claim is such that the court lacks 'ability to supply relief.'" *Adkins v. United States*, 68 F.3d 1317, 1322 (Fed. Cir. 1995) (quoting *Murphy v. United States*, 993 F.2d 871, 872 (Fed. Cir. 1993)).

As this standard pertains to the instant justiciability argument, it is critical to note that "[t]he Constitution vests 'the complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force' exclusively in the legislative and executive branches." *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989) (quoting *Gilligan v. Morgan,* 413 U.S. 1, 10 (1973); *see also Orloff v. Willoughby*, 345 U.S. 83, 94 (1953) ("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.").  Thus, the judiciary has traditionally been extremely reluctant to involve itself in claims implicating military decision-making.  However, this exacting standard does not mean that the decisions of military officials and agencies are completely beyond the scope of judicial review.  For example, as discussed above, section 14502 of Title 10 of the United States Code specifically authorizes courts to review a military secretary's decision not to convene a special selection board.  10 U.S.C. § 14502(h).  Similarly, federal courts have regularly exercised APA jurisdiction over appeals from decisions of military records correction boards (such as the BCNR) where those challenges implicate the selection or constitution of the board members or the procedures the board employed in rendering a decision.  *See, e.g.*, *Barnes v. U.S.*, 473 F.3d 1356, 1361 (Fed. Cir. 2007) ("[A]

challenge to the particular procedure followed in rendering a military decision may present a justiciable controversy[.]") (internal quotation marks omitted); *Dysart v. U.S.*, 369 F.3d 1303, 1315 (Fed. Cir. 2004) ("The Corrections Board statute . . . provides for correction of military records . . . and for judicial review of the Board's decision[.]"); *Chambers v. Green*, 544 F. Supp. 2d 10, 13 (D.D.C. 2008) ("Decisions of a military records correction board can be set aside if they are arbitrary, capricious, or not based on substantial evidence[.]"); *Levant v. Roche*, 384 F. Supp. 2d 262, 267 (D.D.C. 2005) ("[T]his Court does have jurisdiction to evaluate the reasonableness of [a military record corrections board's] decision not to take corrective action[.]").

Notably, while courts do sometimes review the actions of military agencies, the Court's jurisdiction in this area is typically limited to challenges to *procedures*—it does not extend to the *merits* of a promotion decision. *See Adkins*, 68 F.3d at 1323 ("[A]lthough the merits of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the procedure followed in rendering a military decision may present a justiciable controversy[.]"); *see also Pettiford v. Secretary of Navy*, 774 F. Supp. 2d 173, 182 (D.D.C. 2011) ("[A] court's role in reviewing the decision of a military corrections board is to determine whether the decision making process was deficient, not whether [the] decision was correct[.]"). Accordingly, where a plaintiff challenges the merits of a military promotion determination, courts consider such claims to be nonjusticiable. *See, e.g.*, *Fisher v. United States*, 402 F.3d 1167, 1180-81 (Fed. Cir. 2005) (en banc) (noting that the question of "who should be allowed to serve on active duty, and in what capacity" is

generally nonjusticiable); *Millican*, 2006 WL 5640829, at *15 ("[I]t is clear beyond cavil that the merits of [promotion] decisions are nonjusticiable[.]").

Courts that have considered challenges similar to the claims Reilly makes here have analyzed justiciability based primarily on the relief sought. *See, e.g.*, *Adkins*, 68 F.3d at 1322; *Daniels v. United States*, 947 F. Supp. 2d 11, 19 (D.D.C. 2013). If the plaintiff requests relief that implicates the merits of the decision whether or not he should be promoted—such as, for example, claims for "retroactive promotion"—courts uniformly have held that such a remedy, which in effect asks the court to order the promotion of an individual military officer, goes to the merits of the promotion decision and is thus nonjusticiable. *See, e.g.*, *Kreis*, 866 F.2d at 1511; *Millican v. U.S.*, 744 F. Supp. 2d 296, 304 (D.D.C. 2010). Conversely, where plaintiffs have alleged that denial of promotion resulted from a procedural error or statutory violation, courts have been willing to exercise jurisdiction over the claims. *See, e.g.*, *Dilley v. Alexander*, 627 F.2d 407 (D.C. Cir. 1980) (granting relief where an improperly constituted selection board passed over officers for promotion); *Lewis v. U.S.*, 458 F.3d 1372, 1377 (Fed. Cir. 2006) (noting that "the courts can review promotion decisions for violations [of] the Constitution, statutes, or regulations" and thus reaching the merits of a claim that a naval officer's denial of promotion was based upon an erroneous interpretation of a statute governing the qualifications for military physicians).

Reilly's Amended Complaint is carefully crafted to avoid a specific request for "retroactive promotion." These words do not appear; instead, Reilly specifically asks for "constructive service from the time he was improperly removed from the promotion list," "restoration of date of rank and lineal precedence," and also "any other

emoluments to which he was entitled as a result of the improper removal from the promotion list, from the date he should have been originally promoted in the calendar year 2003 forward to the current date[.]" (Am. Compl. at 7.) Taken together, and in light of operative laws that would have required Reilly's promotion as a result of his prior placement on the 2003 Major Promotion List but for his removal, the relief Reilly seeks is substantively indistinguishable from a request for a retroactive promotion. Thus, and to this extent, this Court concludes that Reilly's core improper discharge claim is nonjusticiable. *See Piersall*, 435 F.3d at 322 (claims for retroactive promotion are nonjusticiable).

But even if Reilly's complaint is construed in a more modest fashion (and thus in a light more favorable to him) as one that seeks to redress merely his allegedly mistaken removal from the 2003 Major Promotion List, and even assuming *arguendo* that such a claim would be justiciable as a challenge to the procedures rather than the merits of the action in question (which is by no means a given), this Court still concludes that the authorities' decision to remove Reilly from the 2003 Major Promotion List—right or wrong—is not reviewable. While the federal courts have specific statutory authority to address certain procedural aspects of the military promotion system as explained above, there is no corresponding statutory authority contemplating judicial review of the President's decision to remove an officer's name from a promotion list. Thus, at best, Reilly must rely on the APA—which "erects a 'presumption of judicial review' at the behest of those adversely affected by agency action[,]" *Kreis*, 866 F.2d at 1513 (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967))—to provide a cause of action for his claim that the President

improperly or mistakenly removed his name from the 2003 Major Promotion List. Even setting aside the fact that the President is not an "agency" for the purpose of the APA, *Dalton v. Specter*, 511 U.S. 462, 469 (1994), it is well established that the APA does not extend to claims challenging "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). "The Supreme Court has specified at least two occasions in which that exclusion applies: [i]n those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply, and when the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011) (internal quotation marks and citations omitted). Agency actions in these circumstances are unreviewable because "the courts have no legal norms pursuant to which to evaluate the challenged action, and thus no concrete limitations to impose on the agency's exercise of discretion." *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006).

The President made the decision to remove Reilly's name from the promotion list pursuant to 10 U.S.C. § 14310(a), which provides in full that "[t]he President may remove the name of any officer from a promotion list at any time before the date on which the officer is promoted." This provision places no limitation on the President's authority to remove an officer from a promotion list prior to his or her promotion, and provides no standard by which the Court can evaluate the President's exercise of this removal authority. *See Nation v. Dalton*, 107 F. Supp. 2d 37, 44 (D.D.C. 2000) (construing identical predecessor statute to 10 U.S.C. § 14502(a)). Unlike the statutes that govern a military reserve officer's *selection* for promotion, which lay out specific

and detailed procedures for such selection as described above—or, for that matter, the statutes and regulations that govern the BCNR's review of a petition (discussed below)—the statute governing removal of an officer from a promotion list provides no framework or standard "against which to judge the agency's exercise of discretion." *Sierra Club*, 648 F.3d at 855. And because such a standard is lacking, the removal decision is committed to the sound discretion of the executive branch, and is therefore unreviewable under the APA. *See, e.g.*, *Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 60 (D.D.C. 2001).

Undaunted, Reilly requests that the Court consider his improper discharge claim in any event based on equitable estoppel principles. Reilly points to the fact that, while his removal from the 2003 Major Promotion List was still under consideration in January 2003, his MCR unit was activated for service in Iraq, and he twice served in billets designated for majors during that period of deployment. (Pl. Br. at 15-16.) In Reilly's view, given that Defendants required him to serve in the role of a major during active combat, Defendants should now be equitably estopped from arguing that the CMC had, in fact, lost faith in Reilly as described in the Deputy Secretary of Defense's memorandum to the President. (Pl. Br. at 16 ("[I]t is the plaintiff's contention that the Government is equitably estopped from sending the plaintiff to a war to risk his life in the very jobs that it subsequently asserted (and continues to assert) he is not qualified to fill.").) This creative estoppel contention fails to carry the day because it directly relates to the *merits* of the military's decision not to promote Reilly even as it deployed him to perform the duties of a superior officer. Therefore, just like Reilly's improper

discharge contention, the equitable estoppel claim is a nonjusticiable issue that the Court cannot reach. *See, e.g.*, *Dysart*, 369 F.3d at 1317; *Adkins*, 68 F.3d at 1323.

In sum, notwithstanding Reilly's service in Iraq, it is beyond the power of this Court to determine whether Reilly's name was removed from the 2003 Major Promotion List at the intentional behest of the Secretary of the Navy, or whether the Secretary made a mistake and checked the wrong box before his recommendation was forwarded to the President. Unfortunately for Reilly, this inquiry plainly implicates the standardless removal process, such that if a mistake was made, it was the type of error that was fully within the discretion of military officials—including the President—to make. And because the Court cannot afford Reilly the relief he seeks as a result of his alleged improper discharge, Count I of the complaint fails to state a claim upon which relief can be granted and therefore must be dismissed.

### C. Summary Judgment Under The APA (Count II)

The second count of Reilly's Amended Complaint states that the BCNR violated the APA in its consideration of his petition for correction of his military records. Unlike the improper discharge claim, this claim is properly subject to judicial review under the APA, as it attacks the procedures that the BCNR employed in evaluating Reilly's claim. *See Piersall*, 435 F.3d at 321-322 (collecting cases that have exercised jurisdiction to review the decisions of boards for correction of military records "in light of familiar principles of administrative law") (internal quotations marks and citations omitted). With respect to Reilly's claim under the APA, Defendants argue that Reilly has failed to meet his burden of showing that the BCNR's decision to deny his petition for correction of his military personnel records was "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law," or that the decision was "unsupported by substantial evidence." 5 U.S.C. § 706(2). Reilly counters that the BCNR's denial meets that standard in three respects: first, because the BCNR relied on the affidavits of Gillis and Spurlock, which Reilly views as double hearsay and therefore insufficient to support the BCNR's decision (Am. Compl. ¶ 17; Pl. Br. at 14-15); second, because the BCNR relied on the "presumption of regularity" that attaches to the actions of government officials, which Reilly views as inapplicable to this "irregular" situation (Am. Compl. ¶ 18; Pl. Br. at 18); and third, because the BCNR never sought an affidavit from the CMC, Gen. Michael W. Hagee, who authored the memorandum originally recommending Reilly's name remain on the 2003 Major Promotion List (Pl. Br. at 14-15).

The Court concludes that Reilly's criticisms are not sufficient either to demonstrate that the BCNR acted arbitrarily or capriciously, or to establish that the BCNR's decision was not supported by substantial evidence. With respect to the affidavits of Gillis and Spurlock, the regulations implementing the BCNR expressly contemplate that, while the BCNR is not "an investigative body," 32 C.F.R. 723.2(b), it may consider both affidavits and advisory opinions as a part of the record before it. *See* 32 C.F.R. 723.6(c) (the record of proceedings "shall include . . . affidavits, papers, and documents considered by the Board[.]"). The regulations also provide that where "the facts have not been fully and fairly disclosed by the records or by the testimony and other evidence before it, the Board may require the applicant or military authorities to provide such further information as it may consider essential to a complete and impartial determination of the facts and issues." 32 C.F.R. 723.6(a)(2). Moreover, the

BCNR is not subject to the hearsay prohibitions in the Federal Rules of Evidence; indeed, it is "abundantly clear that 'administrative agencies may consider hearsay evidence as long as it bear[s] satisfactory indicia of reliability.'" *Honeywell Int'l, Inc. v. EPA*, 372 F.3d 441, 447 (D.C. Cir. 2004) (quoting *EchoStar Communications Corp. v. FCC*, 292 F.3d 749, 753 (D.C. Cir. 2002)). Under these circumstances, the BCNR was well within its statutory mandate and the applicable regulatory framework when it requested an advisory opinion from JAM and relied on the affidavits of Gillis and Spurlock.

Reilly's argument that the BCNR erred in invoking the "presumption of regularity" is also flawed. Indeed, the "presumption of regularity" that the BCNR relied upon comes directly from that body's implementing regulations, which state in relevant part that

> [t]he Board relies on a presumption of regularity to support the official actions of public officers and, in the absence of substantial evidence to the contrary, will presume that they have properly discharged their official duties. Applicants have the burden of overcoming this presumption.

32 C.F.R. 723.3(e)(2). Reilly maintains that the presumption cannot apply here, because (in his view) there is an incongruity between the memorandum from the CMC and the memorandum the Deputy Secretary of Defense provided to the President. (Pl. Br. at 18-19.) But Reilly cites no authority in either his Amended Complaint or his brief for the novel proposition that this presumption should apply only in certain circumstances. (*See, e.g.*, Am. Compl. ¶ 18.) Moreover, as Defendants point out, there is no reason to think that the incongruity Reilly identifies must be resolved in his favor. (Def. Br. at 25 n. 18.) While it is true that the CMC's initial recommendation was that

Reilly remain on the 2003 Major Promotion List, the Secretary of the Navy initialed his disapproval of that recommendation *on the very paper* on which the recommendation was written.  (AR at 12 (CMC Memo).)  And the CMC's original favorable recommendation was also among the papers the Deputy Secretary of Defense forwarded to the President.  (AR at 13 (Wolfowitz Memo).)  Reilly's argument that the officials who were responsible for removing his name from the promotion list were misled into believing that the CMC had lost confidence in him necessarily assumes that those officers were not aware of the CMC's written recommendation (Am. Compl. ¶ 9), but he does not, and cannot, contest the fact that both the Secretary of the Navy and the President were in possession of that initial recommendation letter.  Thus, it appears that the relevant actors had all of the necessary information to make a determination about whether to remove Reilly from 2003 Major Promotion List as in the ordinary course, and there is no reason to doubt that the BCNR's mandate to presume the regularity of the actions of public officials was properly applied.  Put another way, Reilly has not provided any evidence, much less "substantial evidence," of irregularity that would render the BCNR's reliance on the presumption arbitrary and capricious, and the BCNR was well within the bounds of reasonableness when it concluded that Reilly had not met his burden of overcoming that presumption.

Reilly's third argument suggests that the BCNR acted arbitrarily and capriciously in not ordering that the CMC produce an affidavit to explain his position on Reilly's promotion.  This argument is flawed for at least two reasons.  First, Reilly never claims—and the record does not reflect—that he ever *requested* that the BCNR seek such evidence, and "[i]t is a hard and fast rule of administrative law, rooted in simple

fairness, that issues not raised before an agency are waived and will not be considered by a court on review." *Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1297 (D.C. Cir. 2004). Second, and even more significant, is the fact that Reilly's argument faulting the BCNR for not obtaining the CMC's affidavit is necessarily premised on the conclusion that there was a potential mistake in the procedure related to his removal from the promotion list that required further investigation. Reilly vigorously maintains that, given the incongruity between the memo the CMC wrote in support of his promotion and the President's eventual decision to remove him from the promotion list, he should be given the benefit of the doubt and the BCNR should have assumed that a mistake was made, prompting them to seek out more information. (Pl. Br. at 14-15.) But that argument essentially presumes *irregularity* in the prior proceedings—which is precisely the opposite of the legal presumption that the BCNR is required to rely on. *See* 32 C.F.R. 723.3(e).

Finally, even if this Court was convinced that the BCNR should have sought out more information before denying Reilly's petition, it is clear that the BCNR's review process was sufficiently thorough to render that decision rational and not arbitrary. *See Kreis*, 406 F.3d at 686 ("The court need only determine whether the [Board's] decision making process was deficient, not whether [its] decision was correct. . . . Thus, the court must uphold the Board's decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.") (internal quotation marks and citations omitted); *see also Frizelle*, 111 F.3d at 176 (determinations of a military agency need only be "rational" in light of the facts before it). When it received Reilly's petition, the BCNR exercised its considerable discretion to consult JAM and to review

the additional evidence that was gathered as a result of that consultation. That evidence, which related directly to the question of the CMC's position on Reilly's promotion, was internally consistent, and thus raised no further questions about the possibility of error. The BCNR properly reviewed record evidence to make a reasonable determination that there was no merit to Reilly's petition, and that body is entitled to deference regarding both its conclusion that the record was sufficient to permit it to make a decision on Reilly's petition and its ultimate determination. *See McDonough v. Mabus*, 907 F. Supp. 2d 33, 44 (D.D.C. 2012) ("In the D.C. Circuit, review of the actions of military corrections boards is unusually deferential.") (internal quotation marks omitted). This Court sees no arbitrariness, or any other violation of the APA's standards, in the BCNR's decisions in this regard.

## IV. CONCLUSION

For the reasons set forth above, the Court hereby **GRANTS** Defendants' motion to dismiss with respect to Count I of Reilly's Amended Complaint; and enters summary judgment in favor of Defendants with respect to Count II of Reilly's Amended Complaint. As a result, the case is **DISMISSED** in its entirety.


DATE: January 29, 2014                    *Ketanji Brown Jackson*
                                          KETANJI BROWN JACKSON
                                          United States District Judge